IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                      Plaintiff,                    Case No. 3:03 CV 1531

     -vs-

                                              MEMORANDUM   OPINION

MICHAEL MANN,

                      Defendant.

KATZ, J.

## BACKGROUND

This is a case seeking the collection of commissions paid by Alpha Capital Group to agents who sold, on its behalf, investment vehicles in the nature of viatical settlements. This case is an outgrowth of the *Liberte v. Capwill*[1] litigation which has spawned related litigation both in the state and federal courts. The essence of this action contends that Defendant Michael Mann entered into an agent sales agreement whereby he solicited individuals to invest in viatical settlements offered by Alpha. In return, Mann is alleged to have received over $23,790.11 in commissions.

---

[1] *Liberte v. Capwill*, Case No. 5:99 CV 818 (N.D.Ohio) revolves around the viatical settlement industry. Plaintiff Liberte Capital LLC ("Liberte) and Intervening Plaintiffs Alpha Capital Group LLC and Integrity Management Partners, LLC (collectively "Alpha") were engaged in the business of purchasing life insurance policies from terminally ill policyholders willing to sell their rights to the policies. Liberte also solicited investors for policies on the lives of seniors without terminal illness. Investors were solicited by Liberte and Alpha to purchase viatical life insurance investment programs whereby investors were matched in many cases with the policy on the terminally ill person or "viator".

William T. Wuliger was appointed Receiver of Alpha Capital Group in the fall of 2001. Thereafter, he was authorized by the Court in the *Liberte* action, in part, to:

> [U]se his best judgment to protect the rights of Alpha investors and to discharge his duties in a manner calculated to preserve the greatest monetary recovery for the maximum number of all Alpha investors.

(Doc. No. 1290.) More recently, the Court clarified the expanded role of both the General and Alpha Receivers, stating that:

> [I]n keeping with the ultimate goal of maximizing the Estates for the benefit of the investors, [the Receivers] are empowered to represent and pursue the interests of the investors directly. The Receivers shall further continue to carry out their duties and obligations as se forth by previous and existing Order of the Court. Finally, the Receivers shall continue to coordinate their efforts with class counsel to recover, protect and preserve receivership assets.

(Doc. No. 1982.)

In keeping with the Court's mandates, both Receivers have initiated actions against agents for commissions related to their solicitation of viatical settlements.

Wuliger initiated this suit in July 2003 against Mann but amended the complaint in January 2004, alleging the following claims: (1) violations of the 1933 Securities Act, 15 U.S.C. § 77; (2) violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78 j; (3) common law fraud; (4) fraud in the inducement; (5) breach of contract; (6) unjust enrichment; (7) conversion; (8) breach of fiduciary duty/breach of covenant to act in good faith and fair dealing; (9) intentional or negligent misrepresentation; and (10) violations of the Investment Advisor Act, 15 U.S.C. §§ 80b-3, 80b-4, 80b-6, and 80b-15. The *pro se* Defendant now moves for dismissal of these claims under Fed. R. Civ. P. 9(b),12(b)(1), 12(b)(6) and 12(h)(3).

2

**MOTION TO DISMISS STANDARD**

A.  *Fed. R. Civ. P. 12(b)(1).*

Generally, Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.) *cert. denied*, 513 U.S. 868 (1994). A facial attack challenges the sufficiency of the pleading itself. Upon receiving such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio. 1997), *aff'd in part, rev'd in part,* 201 F.3d 418 (6th Cir. 1999).

When a Court is inquiring about whether it has subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Richie*, 15 F.3d at 598. *See also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1986). The plaintiff bears the burden of demonstrating that the Court has and may appropriately exercise jurisdiction over the subject matter. *Id.* The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction. *Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir. 1995); *Rogers v. Stratton Inds., Inc.,* 798 F.2d 913, 915 (6th Cir.), *aff'd* 58 F.3d 1087 (6th Cir. 1995); *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. at 739.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *Westlake*, *supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed. 2005).

With these legal precepts in mind, the Court now turns to the issues *in seriatim*.

### DEFENDANT'S MOTION TO DISMISS

*A. Subject matter jurisdiction*

"Normal practice permits a party to establish jurisdiction at the outset of a case by means of a nonfrivolous assertion of jurisdictional elements [] and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 537, 115 S. Ct. 1043, 1050, 130 L.Ed.2d 1024 (1995). Stated differently, a plaintiff may state jurisdictional allegations in order to establish the court's jurisdiction. However, subject matter jurisdiction should not be confused with substantive validity of the federal claims asserted. *See e.g., EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 622-624 (D.C. Cir. 1997).

In this instance, the Plaintiff has stated federal claims under the Securities Act of 1933 and the Securities Exchange Act of 1934. The Defendant's challenge to subject matter jurisdiction in his motion to dismiss is grounded on the alleged "failure to invoke the courts' jurisdiction to hear the case from its inception." (Def's Mot. at p. 2.) A review of the amended complaint states the basis for subject matter jurisdiction in the second paragraph. Clearly, this Court's jurisdiction was properly stated within the amended complaint and the Court finds a basis for subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.

*B. Verified Complaint*

The Defendant challenges the absence of a verified complaint as fatal to the Plaintiff's complaint and seeks dismissal on that basis. The *pro se* Defendant relies on the following federal rules in support of his argument, Fed. R. Civ. P. 11(a), 23.1, 27(a), 65(b), and 66.

Beginning with Fed. R. Civ. P. 11(a), the language does not mandate a verified complaint or affidavit "unless there is a specific provision to that effect in another rule or statute." *See also*, 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE, § 11.10[2] (3d ed. 2005). Under Rule 23.1, a derivative action by a shareholder must contain a verified complaint. Rule 23.1 is not applicable here because this action is not a derivative shareholder suit. Similarly, the Defendant's recitation and reliance upon Rules 23(a) (involving depositions before action or pending on appeal, 65(b) (motions for temporary restraining orders), and 66 (appointment of a receiver) are simply not applicable to this particular action. Accordingly, the Defendant's argument is not well taken.

*C. In personam jurisdiction*

Next, the Defendant challenges this Court's in personam jurisdiction over him on the basis of faulty service of process. There is no dispute that Plaintiff effected valid service upon Defendant relative to the original complaint. (Doc. No. 3.) The Defendant then filed a motion to dismiss to which the Defendant filed a response. Thereafter, the Plaintiff sought and was granted leave to amend his complaint. He served a copy of the amended complaint by ordinary mail upon the *pro se* Defendant. (Doc. No. 8, p. 28.)

It is only where there are parties who have never appeared or are in default that the Defendant must comport with the dictates of service under Fed. R. Civ. P. 4. *See* Fed. R. Civ. P. 5(a). In this case the Defendant was served with a copy of the amended complaint by ordinary mail and in accordance with the dictates of Fed. R. Civ. P. 5. Accordingly, the Plaintiff has established compliance with the service requirements and, in the absence of a default by the Defendant, the Court finds he was properly served with the original complaint and amended complaint.

*D. Viatical Settlements as "Securities"*

In this instance, the allegations involve the sale of viatical settlements which the Plaintiff contends violated various federal securities laws. Under 28 U.S.C. § 1331:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

The federal laws or statutes implicated in the complaint are those set forth in 12 U.S.C. § 77 and 15 U.S.C. § 78j(b). It is the Defendant's contention that the sale of viatical settlements do not constitute securities. This Court disagrees. The exact same issue was presented in another agent commission action also involving viatical settlements sold by Alpha. *Wuliger v. Christie,* 310 F.Supp.2d 897 (N.D.

Ohio 2004). In that case, this Court examined the Supreme Court's test in *S.E.C. v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed.2d 1244 (1946), the relevant Sixth Circuit precedent, and chronicled the cases considering this same issue in both state and federal forums. *Christie,* 310 F.Supp.2d at 901-908. After examination of the relevant case law, this Court declined to adopt the narrow approach advocated by *S.E.C. v. Lifetime Partners, Inc.,* 87 F.3d 536 (D.C. Cir. 1996), in coming to the following conclusion:

> Therefore, in determining whether the Alpha viatical investment met the requirements under *Howey,* this Court is mindful of the Supreme Court's admonition in *Tcherepin v. Knight*, 389 U.S. 322 (1967), which advocated a more expansive approach to interpreting the term "securities." This Court believes such approach should be "flexible rather than a static principle" since it must be applied to all types of schemes aimed at investors. *Howey,* at 299, 66 S.Ct. at 1103. It applying the "efforts of others" prong, this Court is of the view that the promoter's selection of the vehicle, in this instance a viatical policy, is critical to the investor's expectation of profit. Once the investor agreed to purchase a viatical settlement, Alpha, like Liberte, would match the viatical settlement in an insurance policy maintained by Alpha. There is nothing to suggest the investor was involved or instrumental in the selection of the appropriate viatical policy, relying on the promise of the agent, broker or Alpha that their money would be in a matched policy. Thus, in this Court's view, it is not the date of the viator's death which establishes the success of the investment but the selection by the promoter of the policy into which the investor's money is placed, based upon its expertise in assessing the viator's life expectancy and other variables, which drives the success of the investment. It is this conduct which constitutes efforts of others under the broad construction advocated by the Supreme Court in *Howey*. Even under the analysis in *Lifetime Partners*, such post-purchase conduct would suffice to meet the factors under *Howey*. However, to limit consideration to pre-purchase conduct would, in the words of Judge Wald, "violate[] the principle that form should not be elevated over substance and economic reality." 87 F.3d at 551.

In the case *sub judice*, economic realities dictate against a narrow approach since there will always be opportunistic entrepreneurs who attempt to evade liability based on those distinctions. In the end the investments offered by Alpha and peddled by its agents were an opportunity to "contribute or

7

invest" money into a common enterprise and share profits derived, with the critical aspects of a successful investment riding on the "expertise" of Alpha. Keeping in mind the expansive approach employed in a securities analysis, the Court finds the viatical investments in this case constitute securities under the Federal Securities Act. 310 F.Supp.2d at 908-909. *See also, S.E.C. v. Mutual Benefits Corp.,* 323 F.Supp.2d 1337, 1344 (S.D. Fla. 2004), *aff'd* 408 F.3d 737 (11th Cir. 2005) (finding viatical settlements were securities and rejected defendants' motion to dismiss for lack of subject matter jurisdiction). For these reasons, the Court determines that viatical settlements are securities within the Securities Exchange Acts of 1933 and 1934, thereby confirming the district court's jurisdiction under 28 U.S.C. § 1331.

*D. Securities Act of 1933, § 12, 15 U.S.C. § 77l- Count One*

The remaining portion of the Defendant's memorandum contends a failure to state a claim, failure to plead fraud with sufficient particularity, failure to allege facts that establish an inference of scienter and a failure to allege Defendant is subject to "controlling person" liability. The Court now addresses those alleged failings as it pertains to the enumerated causes of action.

1. Section 12(a)(1)

Under Section 12(a)(1), liability arises where a person sends or attempts to sell a security through the use of interstate commerce or mails if a regular statement is not in effect as to that security. 15 U.S.C. § 77*l*. In order to state a claim under Section 12(a)(1), the plaintiff must establish the following:

> (1) no registration statement covering the securities involved was in effect;
> (2) the defendants were persons who sold or offered to sell securities; and

8

(3) the mails or facilities for interstate transportation or communications, were used in making the sale.

As Section 12(a)(1) is tantamount to strict liability, no showing of scienter is required under this section. *See e.g., Stephenson v. Deutsche Bank AG,* 282 F.Supp.2d 1032, 1062 (D. Minn. 2003).

In this instance, the first requirement is met as stated in paragraph 36 of the amended complaint. Next, the Defendant by virtue of the representative agreement, is alleged to have offered the viatical settlements to the investors thereby satisfying the second requirement. Under the notice pleading standard encompassed in Fed. R. Civ. P. 8, the Plaintiff has stated a claim sufficient to withstand the scrutiny of a challenge under 12(b)(6).

2. Section 12(a)(2).

Under Section 12(a)(2), a private remedy is available for material misstatements or omissions in connection with the sale of offer for sale of a security, the offeror and seller of the security is liable to the purchaser of the security. However, Section 12(a)(2) is not dependent upon registration requirements. The elements of a Section 12(a)(2) claim are the following:

> (1) defendants offered and sold a security; (2) by the use of any means of communication in interstate commerce; (3) through a prospectus or oral communication; (4) by making a false or misleading statement of material fact or by omitting to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; (5) plaintiff did not know of the untruth or omission; and (6) defendants knew, or in the exercise of reasonable care, could have know of the untruth or omission.

*In re Suprema Specialities, Inc., Securities Litig.,* 334 F.Supp.2d 637, 648 (D.N.J. 2004).

Generally, fraud and scienter are not elements of a § 12(a)(2) claim. *See In re Adams Golf, Inc. Securities Litigation,* 381 F.3d 267 (3d Cir. 2004); *Rombach v. Chang,* 355 F.3d 164 (2d Cir.

2004); *In re NationsMart Corp. Securities Litigation,* 130 F.3d 309 (8th Cir. 1997), *cert denied sub nom. NationsMart Corp. v. Carlon,* 524 U.S. 927 (1998). *See also. In re F & M Distributors, Inc.,* 937 F.Supp. 647, 656 n5 (E.D. Mich. 1996).

Having established the viatical settlements involved are securities, the Court now turns to determining whether the Plaintiff has set forth pleadings which rises to the level of its §12(a)(2) claim. The allegations contained in pertinent part are as follows:

> 39) Further, Defendant directly participated in and aided the Seller Alpha, by advising investors to invest in such viatical settlements with Alpha through material misrepresentations and omissions as to the safety of such investments. In particular an to the extent that "non-conforming" viaticals were marketed to investors, Defendant failed to alert investors to the inherent risks and dangers attending investments in such "non-conforming" viaticals, where risk to investment is magnified exponentially. Defendant actively sought to entice naiive investors to place their monies in "non-conforming" policies. Such omissions and misrepresentations confounded and confused Alpha investors and caused them to invest their monies, when they otherwise would not have done so.
>
> a. A non-conforming viatical settlement is an insurance policy that has not passed the period of contestability, which is a period of time during which the insurance company that issued the policy may contest a claim made by a beneficiary and avoid a payout.
>
> b. While the investor can purchase a "non-conforming" viatical settlement at a deep discount, the attendant risk of loss to the investor is astronomical.
>
> 40) Through Defendant's misrepresentations and omissions, many Alpha investors invested their entire life savings in a highly risky venture, with little hope of return of either profit or capital.
>
> 41) Compounding the fraud, Defendant failed to confirm that the investment dollars, which Defendant brought into Alpha, were, in fact, "matched" to viaticals. Defendant also failed to confirm that, if investment dollars were matched to viatical settlements, the viatical settlements offered for purchase by Alpha were valid security instruments that were procured without fraud and that the viaticals were registered as securities, as required by the Securities Act of 1933.

42) Through Defendant's failure to confirm that the viaticals that Alpha offered as investment vehicles were valid instruments that were procured without fraud, Defendant caused Alpha investors to lose the totality of their investments which, in many cases, amounted, also, to the loss of Alpha investors' entire life savings.

43) Defendant, however, profited from the harm Defendant caused Alpha investors because Defendant received commissions after the funding of the viatical policy, for Defendant kept all commissions received, regardless of whether the investment dollars had been matched to viaticals and regardless of whether the investment dollars had been matched to replacement viaticals, in the event that particular viaticals were rescinded by the issuers because of fraud in the inception.

44) Through acts of omission, Defendant failed to disclose and to explain to Alpha investors the intricacies associated with the investment in viaticals, which make them unsuitable as a primary investment instruments for many investors. The attendant risks include:

    a. Risks associated with acts of negligence and/or criminal fraudulent conduct by the parties in whose name the policies were procured and by the parties who sold the policies to Alpha.
    b. Risks of illiquidity in obtaining any return on the viatical settlements.
    c. Risks associated with the possibility that policies would lapse as a result of the exhaustion of reserves required to pay premiums in the event that the insured lived longer than expected, in which event the investors would be required to contribute additional monies to pay premiums in order to prevent the policies from lapsing.
    d. Risks that the insurance company would contest the payment of the proceeds of the policy if the insured died during the period of contestability by the company.
    e. Risks that the insurance company might become insolvent.
    f. Risks associated with the lack of market integrity and regulation of viaticals.
    g. Risks associated with inadequate disclosure of the viatical settlements in the offering material.

45) Further, Defendant's representations to the investors that were made with actual malice or reckless disregard for the truth. They were:

    a. Material misrepresentations as to the safety of the investment in viaticals.
    b. Material misrepresentations made with the knowledge and therefore, malice, as to their falsity.
    c. Reliance by the investors on the misrepresentations of Defendant to the detriment of the investors.

11

Amended Compl. (Doc. No. 8).

In considering Defendant's motion to dismiss and as noted previously, the Court is required to accept the factual allegations as true but need not accept the legal conclusions in making its determination. The allegations contained in Count One of the Amended Complaint contend omissions of material facts which the investors did not have in their possession at the time they agreed to invest in the securities offered by Defendant. Whether or not the Defendant can prevail on the merits is not an issue which a court determines in a Rule 12(b)(6) motion. It is the viability of the complaint, not the merits which is crucial to the present adjudication. Having reviewed the Plaintiff's allegations, they clearly state a cause of action sufficient to withstand Defendant's motion to dismiss at this stage of the proceedings and the litigation can proceed forward on this claim.

Accordingly, Defendant's motion to dismiss is denied as to Count One.

*E. Securities Exchange Act of 1934 §10(b)*

Under the Securities Exchange Act of 1934 a private remedy for fraud prohibits fraudulent conduct relative to the sale of securities. The essential elements of a claim under §10(b)(5) are as follows:

> [A] plaintiff must establish (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by plaintiffs, and (5) proximately causing them injury.

*Helwig v. Vencor,* 251 F.3d 540, 554 (6th Cir. 2001) (citation omitted). The requirements of sufficiently alleging scienter in accordance with the dictates of the heightened pleading requirements under the Private Securities Litigation Reform Act ("PSLRA") of 1955, 15 U.S.C. §78u-4 and -5 were also addressed by the en banc panel in *Helwig*. The Circuit noted that the PSLRA did not alter the scienter

12

requirement, rather "that Congress had instead strengthened the minimum showing necessary to survive a motion to dismiss." *Id.* at 550. The Circuit then quoted from its decision in *In re. Comshare Securities Litigation,* 183 F.3d 542 (6th Cir. 1999) to demonstrate the how such an analysis is "less categorical and more fact-sensitive." *Helwig*, 251 F.3d at 550.

> [W]e cannot agree that under the PSLRA, plaintiffs may establish a "strong inference" of scienter merely by alleging facts demonstrating motive and opportunity where those facts do not simultaneously establish that the defendant acted recklessly or knowingly, or with the requisite state of mind. While facts regarding motive and opportunity may be "relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred," *In re Baesa,* 969 F.Supp. at 242, and may on occasion, rise to the level of creating a strong inference of reckless or knowing conduct, the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter. Thus, under a plain interpretation of the PSLRA as informed by well-settled law on the contours of the "scienter" requirement, we hold that plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of reckless behavior but not by alleging facts that illustrate nothing more than a defendant's motive and opportunity to commit fraud.

*In re Comshare Inc. Securities Litigation,* 183 F.3d at 551.

The *Helwig* court then concluded the inquiry to be "whether those facts produce a strong inference of scienter in securities fraud, which in this Circuit is recklessness for statements of present or historical fact and actual knowledge in the case of forward-looking statements." 251 F.3d at 552.

With these legal precepts in mind, the Court now sets forth the allegations contained in Count Two of the Amended Complaint:

> 48) The Plaintiff hereby incorporates the allegations contained in Paragraphs One(1) through Forty-Seven (47) of the Complaint.
> 49) Defendant's acts of misrepresentation and omission in connection with the sale of viatical settlements (securities) were calculated to deceive investors through guarantees of high rates of return on investors' investments with an absence of risk.
> 50) Further, Defendant failed to perform any meaningful due diligence to ascertain that investors' investment dollars would be placed in viaticals and, if the

13

investment dollars happened to be placed in viaticals, Defendant failed to perform any meaningful due diligence to ascertain that the policies, in which investment dollars were allocated, were policies that were not tainted by fraud in the procurement, which, if tainted by fraud, would then be subject to recission by the insurance carrier.

51) Defendant's conduct in securing investment dollars from unsuspecting investors clearly illustrates a callous and reckless disregard for the safety of the investors' investment.

52) Defendant's sole concern was whether Defendant would receive his commission irrespective of potential harm to the investors whose investment dollars Defendant solicited.

53) Defendant never ascertained whether viatical settlements would be a suitable investment for particular investors, thereby wrongly assuming that every investor could absorb a total loss on his investment.

54) Equally as egregious, Defendant never sought to ascertain whether the investors' investment dollars were, in fact, placed in a viatical. This highly unreasonably conduct illustrates an extreme departure from the standards of ordinary care that Defendant owed to those investors whose investment dollars Defendant sought to acquire through the solicitation of highly dubious securities. Consequently, the investors who invested their monies through the misrepresentations and omissions of Defendant lost their investments, which, in many cases, amounted to the total loss of their life savings.

55) Defendant took part in an elaborate ponzi scheme, calculated to bilk investors of funds by preying on their desire for tremendous profit within a relatively short period of time with little or no risk.

56) The advertising brochure of Alpha, which Defendant utilized in order to hoodwink and seduce unsuspecting and unsophisticated investors, exemplify a type of device, scheme or artifice that operates as a fraud or deceit on the investor.

57) The Alpha investors relied on Defendant's material misstatements, misrepresentations and omissions and suffered a substantial loss of money as a result.

Of critical significance to the present analysis is the element of scienter since this is primary basis of Defendant's challenge herein. Thus, it is for the trial court to determine "[w]hether those facts produce a strong inference of scienter in securities fraud, which in this circuit is recklessness for statements of present or historical fact and actual knowledge in the case of forward looking statements." *Helwig*, 251 F.3d at 552. It is evident that these allegations are sufficient on the issues of motive and opportunity, however, *Comshare* requires "red flags" which may be evidence of recklessness.

14

In this instance, the Defendant allegedly failed to perform any due diligence to ensure the placement of the investments either before or after the sale thereby failing to secure one the critical aspects of the investment, namely to have the monies placed in a particular viatical. This is sufficient to satisfy the recklessness standard under *Helwig* and to propel this litigation to the next stage. *In re F & M Distributors, Inc.*, 937 F.Supp. 647, 656-657 (E.D. Mich. 1996). Lending facial validity to the pleadings is appropriate when much of the factual information lies with the Defendant. *See New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 1999 WL 33295037 (W.D. Ky. 1999). Therefore, viewing the allegations in light of the entirety of the pleadings, *see City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1262 (10th Cir. 2001), this Court finds the Plaintiff has alleged a cause of action under Count Two to withstand a challenge under Fed. R. Civ. P. 12(b)(6).

F. *Controlling Person Liability*

Where multiple defendants are the subject of securities fraud claims, controlling person liability under Section 20(a) of the 1934 Act is a potential cause of action. 15 U.S.C. § 78t(a)[2]. Controlling person liability, however, has not been plead in the amended complaint and Plaintiff provides no authority to support his position. Indeed, the Sixth Circuit has observed "some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a)

---

[2]

**(a) Joint and several liability; good faith defense**
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

claims against the same defendant." *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 697 n.4 (6th Cir. 2004). Accordingly, Defendant's challenge to the amended complaint on this basis is without merit.

## CONCLUSION

For the above-stated reasons, the Defendant's motions to dismiss (Doc. Nos. 4 and 9) are denied.

IT IS SO ORDERED.

                                              s/ *David A. Katz*
                                              DAVID A. KATZ
                                              SENIOR U. S. DISTRICT JUDGE